IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRUE BLUE AUCTIONS, LLC, and<br>WAYNE A. DREIBELBIS, JR.,<br>    Plaintiff | )<br>)<br>)<br>) | Civil Action No. 11-242 Erie |
| v. | )<br>) | |
| ROBERT SCOTT FOSTER, et al.,<br>    Defendants. | )<br>)<br>) | District Judge Cohill<br>Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss amended complaint [ECF No. 12] be granted, and that this case be dismissed.

### II. REPORT

#### A. Relevant Procedural History

Plaintiffs True Blue Auctions, LLC ("True Blue"), and its President, Wayne A. Dreibelbis, Jr. ("Dreibelbis"), initiated this civil rights action pursuant to 42 U.S.C. § 1983, on October 17, 2011, and subsequently filed an amended complaint on November 2, 2011 [ECF No. 6]. Named as Defendants are: Robert Scott Foster ("Foster") and Kevin Lewis ("Lewis"), officers with the City of Franklin Police Department. In their Amended Complaint, Plaintiffs allege that as Plaintiff Dreibelbis was videotaping an auction on private property, Defendant Officers ordered him to leave the auction premises and follow them to a public sidewalk where auction publicity signs were posted. Once there, Plaintiff Dreibelbis was ordered to remove the signs. Plaintiff Dreibelbis videotaped the Defendant Officers making this demand of him, which prompted the officers to inform him that if he continued to videotape the Officers, he would be arrested. Plaintiffs allege that requiring Plaintiff Dreibelbis to stop videotaping on a public sidewalk violated their First Amendment rights.

On January 30, 2012, Defendants filed a motion to dismiss amended complaint [ECF No. 12] contending that: (i) Plaintiffs' claims are barred by the applicable two-year statute of limitations and, alternatively, (ii) Defendants are entitled to qualified immunity from Plaintiffs' claims, and/or (iii) Plaintiffs have failed to state a First Amendment claim upon which relief may be granted. Plaintiffs have since filed a brief in opposition to Defendants' motion. [ECF No. 16]. This matter is now ripe for consideration.

### B.     Relevant Factual History

At around 4:00 p.m. on October 16, 2009, Plaintiff Dreibelbis was on premises located at 928 Liberty Street, Franklin, Pennsylvania, to conduct an auction that was scheduled for October 16 and 17, 2009. (ECF No. 6, Amended Complaint, at ¶ 8). At the time, Plaintiff True Blue had a contract to provide auction services on the premises and had erected notices stating that the auction proceedings would be videotaped. (Id.). The videotaping of auction proceedings is regularly performed by Plaintiff True Blue to maintain a record of bids, the amounts bid, and other details of the auction, and includes both a video and audio recording of the proceedings. (Id. at ¶¶ 9, 10).

At around 4:35 p.m. on October 16, 2009, while Plaintiff Dreibelbis was videotaping the auction proceedings, Defendants approached him and "asked him to go to where there were auction signs, about 75 yards from the premises," and onto a public sidewalk. (Id. at ¶¶ 15, 19). Once there, the Defendant Officers told Plaintiff Dreibelbis that the auction signs at this location had to be removed. (Id. at ¶ 16). Plaintiff continued videotaping during this encounter, in essence taping the Defendant Officers making these demands of him while standing on a public sidewalk. (Id. at ¶¶ 17-20). Defendant Officers ordered Plaintiff Dreibelbis to stop videotaping them, telling him that it was illegal to videotape the Officers and that he could be arrested for doing so. (Id.). Plaintiffs allege that Plaintiff Dreibelbis "curtailed some of his videotaping the rest of the auction that day and the next day because he was concerned he would be arrested for doing so." (Id. at ¶ 21). No criminal charges were ever filed against Plaintiff Dreibelbis, nor did

he receive a ticket or summons, as a result of his encounter with Defendants on October 16, 2009. (Id. at ¶ 29).

**C.    Standard of Review**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

3

evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

Recently, the Third Circuit Court prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

### D. DISCUSSION

#### 1. Statute of Limitations

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims. Samerica Corp. Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998)(internal citations omitted). Thus, based on Pennsylvania's applicable statute of limitations, a § 1983 claim must be filed no later than two years from the date of the alleged violation. See Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir.(Pa.) 1996). In this case, Plaintiffs' original complaint was received by the Clerk of Courts on October 17, 2011. [ECF No. 1]. Thus, barring exception, any claims raised by Plaintiffs arising from events that occurred prior to October 17, 2009, are barred by the applicable statutes of limitations and should be dismissed.

In this regard, Defendants argue that all of Plaintiffs' claims arise from events that took place on October 16, 2009, one day beyond the reach of the two- year limitations period.

However, Plaintiffs respond that October 16, 2011, being the last day of the two-year statute of limitations period, fell on a Sunday. Thus, according to Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure, the limitations period "continue[d] to run until the same time on the next day that [was] not a Saturday [or] Sunday...," which was October 17, 2011, the date Plaintiffs' complaint was filed. The Court agrees and finds that Plaintiffs' complaint was timely filed pursuant to Rule 6(a)(1)(C). Accordingly, Defendants' motion to dismiss Plaintiffs' complaint as untimely should be denied.

## **2.** **Qualified Immunity**

Defendants next argue that they are entitled to qualified immunity from Plaintiffs' claims because "the law regarding the existence of a First Amendment Right to video and audio tape police officers in the performance of their duties was not clearly established at the time of the alleged injury on October 16, 2009." (ECF No. 12, Motion to Dismiss, at ¶ 8).

The doctrine of qualified immunity insulates government officials from liability for damages[1] insofar as their conduct does not violate clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, "qualified immunity shields government officials from suit even if their actions were unconstitutional as long as those officials' actions 'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Burns v. Pennsylvania Department of Corrections, 642 F.3d 163, 176 (3d Cir. 2011) quoting Harlow, 457 U.S. at 818. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly

---

[1] The defense of qualified immunity only applies to monetary damages and not to requests for injunctive relief. Burns, 2011 WL 1486075, at *12 ("Although qualified immunity bars Burns from seeking monetary compensation, he may still be entitled to injunctive relief. See Harris v. Pernsely, 755 F.2d 338, 343 (3d Cir. 1985)."). In this case, however, the only relief requested by Plaintiff is monetary damages.

and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." Burns, at 176 quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009).

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001). The Third Circuit summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id.

Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002). See also Doe v. Delie, 257, F.3d 309 (3d Cir. 2001).[2] This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.

"Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 530 U.S. 730, 739 (2002). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. In order for an official "to have 'fair warning' [...] that

---

[2] The rigid two-step inquiry set forth in Saucier was relaxed by the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009). See also Bumgarner v. Hart, 2009 WL 567227 (3d Cir. 2009). As the Supreme Court explained: "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." Pearson, 555 U.S. at 240.

his or her actions violate a person's rights, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Burns, at 176, quoting United States v. Lanier, 520 U.S. 259, 270 (1997) and Anderson v. Creighton, 483 U.S. 635, 640 (1987). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 56 (2004). The party asserting the defense of qualified immunity bears the burden of establishing it. See Harlow, 457 U.S. at 819.

In support of their qualified immunity argument, Defendants cite the case of Matheny v. County of Allegheny, 2010 WL 1007859 (W.D.Pa. Mar. 16, 2010), wherein the plaintiff was arrested by the defendant police officer for using a cell phone to audio record, without consent, a conversation between the police officer and a third party. As in this case, the plaintiff in Matheny claimed, *inter alia*, that the police officer violated his First Amendment rights by stopping the recording. However, the District Court in Matheny concluded that the police officer was entitled to qualified immunity from the plaintiff's claim, finding that "in light of the existing law as of April 29, 2009 [the date of the plaintiff's arrest], ... the purported First Amendment right to record the police was not 'clearly established.'" Matheny, at *6.

In response, Plaintiffs argue that Matheny is not persuasive because it is an unreported decision with no precedential value. (ECF No. 16, Plaintiffs' Brief, at p. 9). Rather, Plaintiffs cite the Third Circuit's opinion in Kelly v. Borough of Carlisle, 622 F.3d 248 (3d Cir. 2010) for the proposition that "it had been clearly established under at least one 20-year old Pennsylvania Supreme Court case that 'covertly recording police officers was not a violation of the [Wiretap Act].'" Id. at 258, citing Commonwealth v. Henlen, 522 Pa. 514, 564 A.2d 905, 906 (1989). However, Plaintiffs fail to mention that the Third Circuit Court in Kelly ultimately held that "there was insufficient case law establishing a right to videotape police officers during a traffic stop to put a reasonably competent officer on 'fair notice' that seizing a camera or arresting an individual for videotaping police during the stop would violate the First Amendment." Id. at

262.

Moreover, the Kelly court acknowledged at the outset of its discussion that "[w]e have not addressed directly the right to videotape police officers," noting that, in Gilles v. Davis, 427 F.3d 197 (3d Cir. 2005), the Court merely "hypothesized that 'videotaping or photographing the police in the performance of their duties on public property *may* be a protected activity," and that "photography or videography that has a communicative or expressive purpose enjoys *some* First Amendment protection." 427 F.3d at 212 n. 14, citing Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir.2000) (emphasis added). In Matheny, the District Court noted that "[t]he Third Circuit has not expounded upon these assertions, or otherwise provided any guidance on the contours of any First Amendment right to videotape (with or without audio) or photograph the police." Matheny, at *4.

In addition, the Third Circuit Court in Kelly observed that although certain cases "announce a broad right to videotape police, other cases suggest a narrower right," and still others "imply that videotaping without an expressive purpose may not be protected." Kelly, 622 F.3d at 262 (citations omitted). Based on this observation, the Kelly court concluded that "the cases addressing the right to access to information and the right of free expression do not provide a clear rule regarding First Amendment rights to obtain information by videotaping...." Id.

Given the uncertainty in the case law and the lack of authority from the Third Circuit, this Court is unable to rule as a matter of law that there was a clearly established right to videotape a police officer at the time Defendants instructed Plaintiff to stop videotaping them. As a result, the Court finds that, as of October 16, 2009, it would not have been clear to a reasonable officer that Plaintiff Deibelbis had a right to tape the Officers. Accordingly, Defendants are entitled to qualified immunity from Plaintiffs' claims, and this case should be dismissed.

## III  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss amended complaint [ECF No. 12] be granted, and that this case be dismissed.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: April 9, 2012

cc: The Honorable Maurice B. Cohill
United States District Judge